UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ELENA ANICAMA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ORACLE AMERICA, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-04640-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND, ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket Nos. 10, 43 |

## I.　INTRODUCTION

Pro-se Plaintiff Mario Anicama is a former Director at Oracle America Inc. ("Oracle") and brings racial discrimination and retaliation claims against the following three Defendants: (1) Oracle (2) his supervisor Michelle Myer, the Vice President of Americas Real Estate, and (3) Myer's supervisor, Don Watson, the Senior Vice President of Global Real Estate. Plaintiff filed several internal complaints related to racial discrimination and financial practices, and shortly after Defendants terminated his employment. Defendants now move to dismiss Plaintiff's lawsuit. Plaintiff has also filed a motion to amend the Complaint.

## II.　FACTS AND BACKGROUND

A.　Factual Background

Plaintiff was a Director of Real Estate at Oracle America, Inc., on the Latin American team. Docket No. 1-1 at ¶ 4 (Complaint). He is Latin American. He has held other positions at Oracle since 1998. *Id.* at ¶ 16-20. Plaintiff had numerous disputes with his direct supervisor, Michelle Myer.

1. Complaint

Plaintiff alleges that Defendant Myer discriminated and retaliated against him starting around January 2020 until his termination in July 2021. *Id.* at ¶¶ 27, 42.

### a. General discriminatory treatment

- Myer engaged in "defamatory actions, mistreatment, and belittlement" of the Plaintiff and displayed favoritism towards other individuals. *Id.* at ¶ 26.
- Myer allegedly pressured Plaintiff to prematurely terminate his medical leave against his doctor's instructions, and "persistently reached out" to Plaintiff during his medical leave. *Id.* at ¶ 28.
- Plaintiff never received a salary increase greater than 3% in the eight-years working under Myer despite strong performance, and received less stock options compared to lesser performing colleagues. *Id.* at ¶ 38.
- Myer hired an inexperienced attorney for a real estate project over a more experienced one that resulted in mismanagement. *Id.* at ¶ 38.
- At least one other Latin colleague, Daniel Torres, voiced concerns of Myer's discrimination with HR. *Id.* at ¶ 39.
- Myer assigned most projects to Plaintiff, "potentially setting him up for failure." *Id.* at ¶ 40.

### b. Ethics Complaints

- Plaintiff repeatedly reported financial discrepancies in internal financial statements that did not accurately reflect significant cost savings due to the COVID-19 pandemic. *Id.* at ¶ 30. Myer disregarded the reports. *Id.* at ¶ 27. Plaintiff filed a complaint with the Ethics hotline in March/April 2021, and the investigation was closed without further action after a few months. *Id.* at ¶ 30.
- Plaintiff filed a complaint with the Ethics hotline concerning Myer's "racially biased attitude against Latin people" and "ongoing abuse, harassment, and threats." ¶ 31. He was terminated a month later, in July 2021. *Id.* at ¶ 31.

### c. Failure to Act

2

- Oracle and Myer's supervisor Watson failed to respond to Plaintiff's concerns or investigate the allegations of mistreatment. *Id.* at ¶ 41.

d. <u>Termination</u>

- A month after filing the second complaint concerning Myer's racial discrimination, Plaintiff was terminated on July 30, 2021. *Id.* at ¶ 31.
- Myer allegedly received instructions not to communicate with any of Plaintiff's lawyers. *Id.* at ¶ 32.

2. <u>Administrative Filings</u>

The procedure and substance of Plaintiff's pre-complaint administrative filings are relevant to this motion.

On June 17, 2022, Plaintiff filed a charge of discrimination with both the California Department of Fair Employment & Housing and the EEOC. Docket No. 42. In that filing, he asserted that he was discriminated against in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act, as well as "retaliation for participating in a protected activity." Docket No. 42 at 4-5. He included specific allegations of being subjected to harassment, less favorable treatment, and being held to a different standard compared to his White peers. Docket No. 42. He alleged he was denied comparable salary increases and promotion opportunities that his White peers received. *Id.* He alleged that he therefore filed a complaint with the Ethics Hotline regarding racial bias in his manager's treatment of him and the Latin American division and then suffered retaliation as a result. *Id.*

On March 9, 2023, Plaintiff alleges that he received a Notice of Right-to-Sue from the EEOC. Docket No. 10-2 at 10 (State Court Complaint). The Notice stated that Plaintiff's lawsuit under Title VII must be filed in a federal or state court within 90 days of receipt of the notice, or the right to sue based on the charge will be lost. Docket No. 40-2 at 1 (Notice of Right to Sue).

B. <u>Procedural Background</u>

On July 28, 2023, Plaintiff filed a lawsuit against Defendants in San Mateo County Superior Court alleging two causes of action: retaliation under the California Fair Employment

3

1   and Housing Act (FEHA), and declaratory relief under 28 U.S.C. § 2201(a).  Docket No. 1-1 at

2   PDF 17-19.  His lawsuit asserted retaliation but not a substantive discrimination claim.  On

3   September 11, 2023, Defendants removed the case to the Federal District Court for the Northern

4   District of California, i.e. this Court.  Docket No. 1 (Notice of Removal).  Then, in September

5   2023, Defendants filed their Motion to Dismiss.  Docket No. 10.

6       This Court initially dismissed the case after Plaintiff failed to file an opposition and an

7   Order to Show Cause, Docket No. 20, but vacated the dismissal order and reinstated the case upon

8   finding that Plaintiff's failure to respond was due to a good faith believe that the case was still in

9   state court.  Docket No. 27 (February 22, 2024 Hearing Minute Order).  This Court also noted the

10  Plaintiff's pro se status and apparent confusion as to the removal of the case to federal court.  *Id.*

11       On June 18, 2024, Plaintiff also filed a Motion to Amend the Complaint to allege a Title

12  VII claim.  Docket No. 43.  Now before the Court is reconsideration of Defendants' Motion to

13  Dismiss and Plaintiff's Motion to Amend the Complaint.

### III.    LEGAL STANDARD

**A.    Failure to State a Claim (Rule 12(b)(6))**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV.     DISCUSSION

A.     Plaintiff's Motion for Leave to Amend Complaint

Plaintiff moves to amend his complaint to allege a Title VII claim. Docket No. 43. "[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (internal quotation marks and citations omitted). However, where amendment would be futile to cure the defects, the district court is not obligated to grant leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("[A] district court need not grant leave to amend where the amendment. . . is futile.").

Here, Defendants correctly argue that leave to amend is futile because any Title VII claim is time-barred. Employees have 90 days after receipt of an EEOC right-to-sue notice to file suit under Title VII. 42 U.S.C. § 2000e-5(f)(1). Plaintiff alleges that he received Notice of Right-to-Sue from the EEOC on March 9, 2023. Docket No. 10-2 at 10 (State Court Complaint). The Notice clearly stated in capital, bold, and underline print:

> Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice.**

Docket No. 40-2 at 1 (Notice of Right to Sue). It further stated that otherwise, the right to sue based on the charge will be lost. *Id.* Plaintiff had until June 7, 2023 to file his complaint, but only did so on July 28, 2023. Docket No. 10-2. Plaintiff does not contest that a Title VII claim would be time-barred.

Therefore, any further amendment to include a Title VII claim is futile. The Court denies the motion.

5

B.  Defendants' Motion to Dismiss

   1.  Exhaustion of Administrative Remedies for FEHA claim

Defendants first argue that Plaintiff failed to exhaust his administrative remedies under FEHA, a predicate to the case at bar. Specifically, they argue that although he received a Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC"), he failed to receive one from the California Civil Rights Department ("CRD") (formerly known as the Department of Fair Employment and Housing ("DFEH")) and therefore cannot pursue his FEHA claims. Motion at 6.

To bring a civil action alleging violations of the FEHA, a plaintiff must first exhaust administrative remedies by filing a timely complaint with the appropriate government agency and receiving a right to sue letter. *See* Cal. Gov't Code § 12965(b) (FEHA). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), as amended (Feb. 20, 2002) (internal citations and quotations omitted).

   a.  FEHA claim in initial charge

As an initial matter, although Plaintiff only explicitly invokes Title VII and the Age Discrimination in Employment Act in his charge filed with the EEOC, the Court construes the initial charge as asserting a FEHA claim, because such administrative charge must be construed "with utmost liberality." *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B.*, 276 F.3d at 1100). Although an administrative charge that "merely mention[s] the word 'discrimination'" will generally not suffice, *id.* at 637, the claims are defined by "the factual allegations made in the charge itself" (*i.e.*, those "describing the discriminatory conduct about which a plaintiff is grieving"). *Id.* Here, Plaintiff detailed that he filed a complaint with the company Ethics Hotline alleging racial bias, had addressed concerns of disparate treatment on several occasions, was denied opportunities and compensation due to his race, and was ultimately discharged. Docket No. 42. The factual allegations of the administrative charge are clearly sufficient to constitute a violation of FEHA as well as federal law. *See* Docket 42.

6

*Neill v. YMCA of San Diego,* 2024 U.S. Dist. LEXIS 78033 (S.D. Cal. 2024) is instructive. There, a *pro se* plaintiff filed a complaint using the court's form complaint that alleged Plaintiff had suffered discrimination on the basis of his "gender, race, and medical disability" while employed by the defendant. *Id.* at *2. Plaintiff did not specifically allege Title VII or FEHA claims, but the court noted that "liberally construed, the Complaint appeared to raise" claims for both Title VII and FEHA. *Id.*[1] The same applies here.

*Neil* is consistent with the Ninth Circuit, which generally instructs that *pro se* pleadings are to be liberally construed. *See Huffman v. Lindgren,* 81 F.4th 1016, 1020–1021 (9th Cir. 2023) ("The circuits that have reached the issue speak with one voice: they have uniformly declined to extend the liberal pleading standard to pro se attorneys. … There is a good reason that we afford leeway to pro se parties, who appear without counsel and without the benefit of sophisticated representation: Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel." (internal quotation marks and citation omitted)); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam) ("[W]e have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

Therefore, given the factual allegations of the administrative charge that detail Defendants' retaliation, along with the fact that Plaintiff filed with both the EEOC and the CRD, the Court construes Plaintiff's dual filed charge to include a FEHA claim.

        b.      <u>Notice of Right-to-Sue</u>

Next, while Plaintiff only received a Notice of Right-to-Sue from the EEOC, he did file his initial charge with both the EEOC and the CRD. The top of the initial charge document states that the charge is presented to both EEOC and FEPA (another former acronym for the CRD). Docket No. 42. Additionally, the end of the document states that the signee "want[s] this charge filed

---

[1] The Court later found that the plaintiff failed to exhaust his administrative remedy, but on other grounds – his first amended complaint only alleged sexual assault, which he did not allege in the initial complaint nor in the administrative charge he filed with the CRD. The court then dismissed his sexual assault claim. *Id.* at *13-14.

1   with both the EEOC and the State or local Agency, if any." *Id.* Then, 15 months after Plaintiff
2   filed the initial charge, Plaintiff received the EEOC's Notice of Right-to-Sue for Plaintiff's Title
3   VII claims, but it did not say anything about the FEHA claims. A right to sue letter from the
4   EEOC satisfies the exhaustion requirement only for the purposes of an action based on federal law
5   such as Title VII, not for a state law action under the FEHA. *Foroudi v. Aerospace Corp.,* 57 Cal.
6   App. 5th 992, 1001 (2020). In *Foroudi,* the court found that the plaintiff's EEOC right-to-sue
7   notice did not exhaust his administrative remedies for his class and disparate impact claims which
8   were "premised exclusively on alleged violations of state law." *Id.* The court relied on *Martin v.*
9   *Lockheed Missiles & Space Co.,* which was a similar case where a plaintiff only amended her
10  EEOC charge to include sex discrimination claims under FEHA, but failed to file an amended
11  charge with the DFEH. *Martin v. Lockheed Missiles & Space Co.,* 29 Cal. App. 4th 1718, 1726
12  (Cal. Ct. App. 1994). Thus, Defendants correctly argue that the EEOC Notice of Right-to-Sue is
13  insufficient to exhaust administrative remedies for his FEHA claims.
14      This is true even given the worksharing agreement between the EEOC and the CRD that
15  allocates responsibility for initial processing of charges and authorizes transmittal of charges
16  between the two agencies.[2] *See* Fiscal Year 1988 Worksharing Agreement between California
17  DFEH and U.S. EEOC. Under the agreement, each agency designates the other as its agent for the
18  purpose of receiving charges and agrees to forward to the other agency copies of all charges within
19  the statutory jurisdiction of the other agency. *Id.; see also* Cal. Practice Guide, Federal
20  Employment Litigation (The Rutter Group), 10:7-9 (2009) ("As a result of such work sharing
21  agreements, each agency designates the other as its agent for the purpose of receiving charges on
22  discrimination claims that overlap under federal and state law."). Responsibility is allocated
23  between the EEOC and the CRD based on the nature of the claims. The EEOC is primarily
24  responsible for initially processing Title VII claims and other federal claims. *See* Fiscal Year 2019
25  Worksharing Agreement between California DFEH and U.S. EEOC at 3-4 (…the EEOC will
26  initially process the following charges: -- All Title VII, ADA, and concurrent Title VII/ADA

---

[2] Worksharing agreements between the EEOC and state agencies are authorized by 42 U.S.C. § 2000e-4(g)(1) and 29 C.F.R. §§ 1601.13(c), 1626.10(a).

charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation… ).  The CRD is primarily responsible for initially processing FEHA claims.  *Id.* (…the FEPA will initially process the following type of charges:… -- All charges that allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the FEPA Ordinance, or where the EEOC is mandated by the federal court decision or by internal administrative EEOC policy to dismiss the charge, but the FEPA can process that charge.").

Here, because Plaintiff dual filed his initial charge with the CRD and the EEOC and it can reasonably be construed to include a FEHA claim, the CRD should also have issued Plaintiff a Notice of Right-to-Sue as to the FEHA claim pursuant to the worksharing agreement.  It did not do so.  The complaint does not allege whether the CRD failed to process the FEHA claim or whether Plaintiff never received a Notice from the CRD.  Nevertheless, the CRD's failure to issue a right to sue notice does not vitiate exhaustion.  In *Grant v. Comp USA, Inc.* 109 Cal. App. 4th 637, 650 (2003), the plaintiff filed an administrative complaint with the DFEH and received a Notice of Right-to-Sue on April 11, 1995.  The DFEH rescinded the Notice five months later, and without requesting a second Right-to-Sue notice, the plaintiff filed an action over a year later.  *Id.*  The California Court of Appeal held that the DFEH had a duty under Cal. Gov't. Code § 12965 to issue a second Notice of Right-to-Sue one year after plaintiff filed the administrative complaint.  Because it did not do so, the plaintiff was not barred from bringing the suit.  *Id.* at 651.  It explained, "the failure by the DFEH to issue a right-to-sue notice after one year does not preclude a determination that employee has exhausted her administrative remedies." *Id.*

Similarly here, the CRD had a duty to issue a Notice of Right-to-Sue to Plaintiff for his claims reasonably construed to be FEHA claims; its failure to do so does not bar Plaintiff from bringing his suit based on such claims herein.  *See* Docket No. 42; *c.f. Martin v. Lockheed Missiles & Space Co.,* 29 Cal. App. 4th 1718, 1730 (1994) (finding that the plaintiff failed to exhaust her state administrative remedies because her amended charges of sex discrimination, harassment, and retaliation were not known to the DFEH when it first issued her a right-to-sue letter based on her initial charge of age discrimination).

Therefore, Plaintiff has exhausted his administrative remedies for his FEHA claim.

2. Employer liability

Under FEHA, the employer alone is liable for retaliating against an employee in violation of Gov. C. § 12940(h). Supervisors and coworkers are *not* personally liable for their roles in the retaliation. *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1173 (2008). Although § 12940(h) applies to retaliation by "any employer … *or person*," it is interpreted *to be consistent with § 12940(a),* which prohibits *discrimination* by "an employer" and does not apply to supervisors and coworkers. Hon. Ming W. Chin, et al., California Practice Guide: Employment Litigation Ch. 5(II)-A (2024); *see Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th at 1167-1173.

While the Ninth Circuit previously allowed supervisors to be held liable for FEHA retaliation, *see e.g., Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1288 (9th Cir. 2001), the more recent holding in *Jones* was confirmed by the California Supreme Court and is followed by California District Courts as well as the Ninth Circuit. *See Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 901 (2008)), *Mayfield v. County of Merced*, 2014 U.S. Dist. LEXIS 158671 (E.D. Cal. Nov. 10, 2014); *Gorom v. Old Dominion Freight Line Inc.*, 2013 U.S. Dist. LEXIS 10039, *8 (C.D. Cal. Jan. 17, 2013); *Morrow v. City of Oakland*, 2012 U.S. Dist. LEXIS 81318, *55 (N.D. Cal. June 12, 2012); *Lavery-Petrash v. Sierra Nev. Mem. Hosp.*, 2012 U.S. Dist. LEXIS 41155, *9 (E.D. Cal. Mar. 26, 2012); *Davis v. Prison Health Servs.*, 2011 U.S. Dist. LEXIS 85313, *11-12 (N.D. Cal. Aug. 3, 2011); *and see Grosz v. Lassen Cmty. College Dist*., 360 Fed. Appx. 795, 797 (9th Cir. 2009). Additionally, the Ninth Circuit's earlier ruling in *Winarto* has been questioned by at least one district court. *See Hermosillo v. State Ctr. Cmty. College Dist.,* 2015 U.S. Dist. LEXIS 43960, *3.

Here, Defendants Myer and Watson were Plaintiff's supervisors, not employers. *See* Docket No. 10-2 at ¶¶ 22, 28 (Request for Judicial Notice, Ex. A) (providing Myer as the person that Plaintiff and his team reported to and Watson as a person above Myer's position). Therefore, Myer and Watson are not personally liable for their roles in the alleged retaliation under FEHA. Defendants are correct that any amendment to Plaintiff's claim against Myer and Watson would be

10

1    futile. The Court dismisses the claims against Myer and Watson.

2    In contrast, Defendant Oracle is Plaintiff's employer, and therefore alone can be liable for

3    the alleged retaliation under FEHA. Defendants do not contest this. Oracle is thus the sole

4    remaining Defendant.

5          3.      Retaliation

6    Defendants argue that Plaintiff fails to allege a causal connection between his termination

7    and Myer's retaliatory animus.

8    Courts use the *McDonnell Douglas* burden-shifting framework for retaliation cases under

9    FEHA:

> — plaintiff must prove a prima facie case;
> — the employer must then articulate a legitimate, nonretaliatory reason for the action taken; and
> — plaintiff must then prove the employer's reason is a pretext.

*Stegall v. Citadel Broadcasting Co.*, 350 F3d 1061, 1065 (9th Cir. 2003).

To establish a prima facie case of retaliation under FEHA, a plaintiff must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) a causal link existed between the protected activity and the adverse employment decision. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). As to the third element, "[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citing *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000)). If a plaintiff relies solely on the proximity in time inference to support the causation prong, that proximity in time must be "very close." *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (per curiam) (citing cases finding a three-month period and a four-month period too long).

      a.      Protected Activity

An employee's formal or informal complaints regarding unlawful discrimination are a "protected activity" and actions taken against the employee after such complaints may constitute retaliation. *See Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F3d 493, 506-507 (9th Cir. 2000). To establish this element, Plaintiff need not prove that their complaint of

11

racial discrimination is in fact true, but just the fact that they filed such a complaint is a protected activity. *See Brown v King Cty.,* 823 Fed. Appx. 478, 481 (9th Cir. 2020) (finding that plaintiff engaged in protected activity by filing a discrimination complaint).

Here, Plaintiff's filing of a formal complaint with the Ethics Complaint hotline is sufficient to establish "protected activity." Defendants argue that Plaintiff's allegations fail to show retaliatory animus, but at this stage Plaintiff only needs to allege that he engaged in protected activity, which he has sufficiently done. *See e.g. Passantino,* F.3d at 506-507 (finding that a female manager at Johnson & Johnson's initial former complaints to her supervisor regarding sex discrimination constituted protected activity).

          b.    <u>Adverse Employment Action</u>

Plaintiff has shown that he suffered an adverse employment decision because he was terminated shortly after filing the second complaint. Defendants do not contest this element.

          c.    <u>Causation</u>

Here, Plaintiff filed his second complaint to the Ethics hotline in June 2021, in which he alleged he endured ongoing abuse, harassment, and threats from Myer as well as Myer's racially biased attitude toward Latin people. He was fired a month later in July 2021. The very close proximity in time is sufficient to reasonably infer causation.

Plaintiff's first complaint to the Ethics hotline, in which he reported irregular financial reporting, could also reasonably infer causation as the first of two complaints to the Ethics hotline that could have ultimately led to his termination. *See e.g., Acosta v. Hilton Grand Vacations Co.,* 2017 WL 2957795 at *2 (D.S.C. 2017) (finding evidence of temporal proximity because plaintiff made multiple complaints regarding alleged discriminatory conduct and was terminated "shortly after at least one of those alleged complaints.")

          d.    <u>Conclusion</u>

Therefore, Plaintiff has established a prima facie case of retaliation, and the Court DENIES dismissal of the retaliation claim against the sole remaining Defendant Oracle, Inc.

C.    <u>Declaratory relief</u>

Defendants moves to dismiss Plaintiff's request for declaratory relief. They argue that

1   because FEHA authorizes declaratory relief as a remedy to prevent ongoing discrimination, it does
2   not apply here to Plaintiff, citing *Mauran v. Walmart Inc.*, 786 Fed. Appx. 671, 674 (9th Cir.
3   2019). But *Mauran* is inapposite. There, the Ninth Circuit held that a former Wal-Mart
4   employee was not entitled to declaratory relief because he failed to establish his age discrimination
5   claim under FEHA, and therefore the district court correctly entered summary judgment on his
6   claim for declaratory relief. *Id.*

7   However, to the extent that declaratory relief prevents prospective harm, such relief is not
8   appropriate here because Plaintiff is no longer an employee of Oracle, nor does he seek
9   reinstatement of his position. Thus, he lacks standing. "A case or controversy exists justifying
10  declaratory relief only when 'the challenged ... activity ... is not contingent, has not evaporated or
11  disappeared, and, by its continuing and brooding presence, casts what may well be a substantial
12  adverse effect on the interests of the ... parties.'" *Seven Words LLC v. Network Sols.*, 260 F.3d
13  1089, 1098–99 (9th Cir. 2001). "A declaratory judgment merely adjudicating past violations of
14  federal law—as opposed to continuing or future violations of federal law—is not an appropriate
15  exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir.
16  2017). However, a former employee seeking to be reinstated or rehired may have standing to seek
17  prospective relief. *See Bayer v. Neiman Marcus Group, Inc.,* 861 F.3d 853, 865 (9th Cir.2017).

18  Here, Plaintiff seeks declaratory relief in the form of "an order declaring Defendant's
19  practice unlawful, and that Defendants are liable to Plaintiff for damages caused by that practice."
20  Docket No. 1-1 at 13 (Complaint). Because Plaintiff is longer employed at Oracle and does not
21  seek to be reinstated, he lacks standing. The declaratory judgment he seeks merely adjudicates
22  past violations, as opposed to continuing or future violations, and therefore is not appropriate.
23  S*ee, e.g., Walsh v. Nev. Dep't of Human Res.,* 471 F.3d 1033, 1037 (9th Cir. 2006) (finding that
24  plaintiff did not have standing to seek an injunction requiring her former employer to implement
25  anti-discriminatory policies because she was no longer an employee).

26  Therefore, the Court dismisses the claim for declaratory relief.

## V.    CONCLUSION

28  The Court DENIES Plaintiff's motion to leave to amend to allege a Title VII claim.

The Court DENIES dismissal for failure to exhaust administrative remedies under FEHA.

The Court GRANTS dismissal against Myer and Watson.

The Court DENIES dismissal of the FEHA claim against Oracle.

The Court GRANTS dismissal of declaratory relief.

**IT IS SO ORDERED**.

Dated: July 15, 2024

_____
EDWARD M. CHEN
United States District Judge